1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MARY PERKS, et al.,

                        Plaintiffs,

     v.

ACTIVEHOURS, INC.,

                     Defendant.

No. 19-cv-05543-BLF

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF A SETTLEMENT CLASS**

Judge: Hon. Beth Labson Freeman
Hearing Date and Time: October 29, 2020, 9:00 a.m.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

III.    LEGAL STANDARD ......................................................................................... 4

IV.     THE TERMS OF THE SETTLEMENT ............................................................ 4

      A.      The Class Definition ............................................................................... 4

      B.      The Expected Recovery for the Class ..................................................... 5

      C.      The Settlement's Notice Program ........................................................... 7

      D.      The Plan of Allocation and Claims Process............................................ 7

      E.      Fees, Costs, and Service Awards ............................................................ 8

      F.      Release of Claims ................................................................................... 8

      G.      Proposed Schedule for Final Approval ................................................... 8

V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL...................... 9

      A.      The Settlement is Procedurally Fair........................................................ 9

            1.      The Settlement is the result of arm's length negotiations...................... 10

            2.      Plaintiffs obtained significant discovery in the context of the mediation................................................................................ 10

            3.      The Settlement satisfies the *Bluetooth* factors ....................... 11

      B.      The Settlement is Substantively Fair. .................................................... 12

            1.      While strong on its merits, Plaintiffs' case faces substantial barriers. ....................................................................... 12

            2.      The amount offered in settlement is adequate. ...................... 13

            3.      The plan of allocations is fair, adequate, and reasonable. ..................... 14

VI.     THE COURT SHOULD CERTIFY THE PROPOSED CLASS.................... 16

      A.      The Class Meets the Prerequisites of Rule 23(a). ................................. 16

            1.      The Class is sufficiently numerous. ...................................... 16

2.      There are common questions of both law and fact. ................................ 16

3.      The Settlement Class Representatives' claims are typical of the Class. .............................................................................. 17

4.      The Named Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Settlement Class. ....................... 17

B.      The Requirements of Rule 23(b)(3) Are Met. .................................................. 18

1.      Common issues of law and fact predominate. ....................................... 18

2.      Class treatment is superior in this case. ................................................ 20

VII.    CONCLUSION ............................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................16, 19

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................................9, 11

*Carnes v. Atria Senior Living, Inc.*,
No. 14-CV-02727-VC, Order ..........................................................................................8

*In re Checking Account Overdraft Litig.*,
307 F.R.D. 656 (S.D. Fla. 2015) ....................................................................................20

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................................8

*Clemens v. Hair Club for Men, LLC*,
15-CV-01431-WHA, 2016 WL 1461944 (N.D. Cal. Apr. 14, 2016) ....................................18

*Cohen v. Trump*,
303 F.R.D. 376 (S.D. Cal. 2014) ....................................................................................17

*Cotter v. Lyft, Inc.*,
193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...........................................................................4, 11

*Cotter v. Lyft, Inc.*,
No. 13-CV-04065-VC, 2017 WL 1033527 (N.D. Cal. Mar. 16, 2017) ................................13

*Destefano v. Zynga, Inc.*,
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................11

*Ebarle v. Lifelock, Inc.*,
No. 15-CV-00258-HSG, 2016 WL 5076203 (N.D. Cal. Sept. 20, 2016)...............................11

*Ellsworth v. U.S. Bank, N.A.*,
No. 12-2506, 2014 WL 2734953 (N.D. Cal. June 13, 2014)................................................19

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .........................................................................................19

*Guilbaud v. Sprint Nextel Corp.*,
No. 3:13-CV-04357-VC, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016) ...............................10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................................19, 20

*Hart v. Colvin*,
No. 15-CV-00623-JST, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) .................................10

*Jabbari v. Farmer*,
WL 4046029, at *4 (9th Cir., July 20, 2020). ...........................................................19

*In re Mego Fin. Corp. Securities Litig.*,
213 F.3d 454 (9th Cir. 2000) ..................................................................................10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..............................................................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................17

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................14

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ..................................................................................11

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) ............................................................................19

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ..................................................................................17

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ................................................................................17

*Satchell v. Fed. Express Corp.*,
No. 03-CV-2659-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...........................10

*Slaven v. BP Am., Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000) ............................................................................16

*Smith v. Cardinal Logistics Mgmt. Corp.*,
No. 07-CV-02104-SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) .........................20

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003) ..................................................................................17

*Stockwell v. City & County of San Francisco*,
749 F.3d 1107 (9th Cir. 2014) ................................................................................16

*Sykes v. Mel Harris & Assocs. LLC*,
285 F.R.D. 279 (S.D.N.Y. 2012) ............................................................................16

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ...................................................................19

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ......................................................................14

*Trosper v. Styker Corp.*,
    No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014)................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)...........................................................................18

*Uppal v. CVS Pharmacy, Inc.*,
    WL 10890652 at *1, (N.D. Ca. 2015)..............................................................12

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. 11-CV-00406-DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................................................16

**Statutes and Rules**

Class Action Fairness Act, 28 U.S.C. §§ 1711-15........................................................16

Fed. R. Civ. P. 23 ............................................................................. *passim*

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions* § 4:49 (5th ed. 2012)..................................4, 8

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that October 29, 2020 at 9:00 a.m. or at such other date as may be agreed upon, and in Courtroom 3 of the United States District Court for the Northern District of California San Jose Courthouse, located at 280 South First Street, San Jose, California, Plaintiffs, on behalf of a proposed Settlement Class, will and hereby do move for an order granting preliminary approval of the Settlement, conditionally certifying the Settlement Class, appointing Named Plaintiffs as Settlement Class Representatives, appointing Class Counsel, directing Notice, scheduling a fairness hearing, and for other relief explained in the accompanying Memorandum.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Activehours, Inc., d/b/a Earnin ("Earnin"), is a novel financial technology company that promises its users a seemingly simple service: access to their earned but unpaid income as cash now, with Earnin recouping payment from the user's bank account on the user's next payday. Earnin promises to provide this service with no fees, costs, or hidden charges. Plaintiffs alleged that, contrary to this promise, hundreds of thousands of Earnin users experienced practices that caused them to incur overdraft fees from their banks.

In 2019, Plaintiffs sued Earnin to recover those fees and other damages for themselves and all others similarly situated. Dkt. 1. Now, after preliminary litigation and lengthy settlement negotiations assisted by Magistrate Judge Laurel Beeler, Plaintiffs and Earnin have reached a

proposed Settlement Agreement.[1] Plaintiffs now request that this Court preliminarily approve

that Settlement, so that notice may issue to Settlement Class Members, and the Court may

schedule a Final Fairness Hearing to determine if the Settlement is sufficiently fair, adequate,

and reasonable under Federal Rule of Civil Procedure 23.

The Court should grant preliminary approval because the Parties, with Judge Beeler's

guidance, arrived at a settlement that provides an excellent recovery for the Settlement Class,

especially against a backdrop of severe financial difficulties for Earnin. In addition, the

Settlement adheres to this District's *Procedural Guidance for Class Action Settlements*

("Procedural Guidance"). Plaintiffs respectfully submit that the Court will likely be able to

approve that Settlement as fair, reasonable, and adequate for Settlement Class Members.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Many Earnin users report having experienced overdraft fees or insufficient funds event

fees that their bank attributed to a withdrawal from Earnin between September 3, 2015 and May

28, 2020. Settlement ¶ I. These users claim Earnin's marketing failed to adequately represent the

risk of incurring such third-party fees while using the service. *Id.*

On September 3, 2019, Plaintiffs Mary Perks and Stanley Alexander (the "Perks

Plaintiffs") filed a putative class action in this Court, captioned *Perks, et al, v. Activehours, Inc.*

*d/b/a Earnin*, Case No. 5:19-cv-05543-BLF (N.D. Cal.). On November 15, 2019, Plaintiff Jared

Stark filed the putative class action in this Court captioned *Stark v. Activehours, Inc. d/b/a*

*Earnin,* Case No. 5:19-cv-07553-BLF (N.D. Cal.), which was subsequently related to and

---

[1] The capitalized terms in this Motion have the meanings ascribed to them in the Stipulation and

Agreement of Class Action Settlement and Release ("Settlement," "Settlement Agreement," or

"SA"), filed concurrently.

coordinated with the *Perks* action for purposes of settlement conferences with Magistrate Judge Laurel Beeler. Dkt. 13.[2]

On April 7, 2020, counsel for the Parties attended a settlement conference, conducted via videoconference, with Judge Beeler. Settlement ¶ I. Prior to that settlement conference, the parties exchanged a substantial amount of factual information, including follow up requests for information. *Id*. Counsel for Plaintiffs also made an initial settlement demand on Defendant. *Id.* During the conference, and with the assistance of Judge Beeler, counsel for the Parties engaged in discussions regarding the factual circumstances, as well as potential strengths and weaknesses of the allegations in support of, and defenses to, the Actions. Those efforts did not, however, result in a settlement at that time. *Id.*

During the weeks that followed, and again facilitated by Judge Beeler, counsel for the Parties continued discussions via multiple telephone conferences, continued to exchange proposals, and continued their discussions of a potential resolution. The parties also engaged in additional exchanges of information.  *Id.*

On May 28, 2020, counsel for the Parties attended an additional settlement videoconference with Judge Beeler. During that settlement videoconference, the Parties, with the assistance of Judge Beeler, reached an agreement in principle on the material terms of the proposed settlement. *Id.* The Parties did not discuss attorneys' fees, service awards for Class Representatives, costs, and expenses prior to reaching an agreement as to the material terms of the relief for the Settlement Class. *Id.*

---

[2] Plaintiff Jared Stark, who is not a member of the Settlement Class, has separately agreed with Earnin to voluntarily dismiss his individual claims. *See* Fed. R. Civ. P. 23(e)(3).

On July 23-24, 2020, the Parties signed the final Settlement Agreement for which Plaintiffs now seek the Court's preliminary approval. *Id.* at ¶ XIV.

### III.    LEGAL STANDARD

To approve a class settlement, a court must determine that the settlement is "fair, reasonable, and adequate." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016) (quoting Fed. R. Civ. P. 23(e)(2)). Preliminary approval of a proposed settlement is the first step in making this determination. *See* 4 Newberg on Class Actions § 13:10 (5th ed.) (court's objective at preliminary approval "is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing").

A district court reviewing a proposed class action settlement should grant preliminary approval and order notice sent to class members if it appears it will "likely be able to" (1) finally approve the settlement as fair, adequate, and reasonable, and (2) certify the proposed settlement class. Fed. R. Civ. P. 23(e)(1)(B). Final approval is warranted if the settlement is fair, reasonable, and adequate, considering the adequacy of the class representative and counsel, whether the settlement was negotiated at arm's length, the relief provided to the class, and whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors encompass both "procedural considerations and substantive qualities[.]" *Id.* Rules Advisory Comm. notes (2018).

### IV.    THE TERMS OF THE SETTLEMENT

**A.    The Class Definition**

The Parties request that the Court certify the following Settlement Class under Federal Rule of Civil Procedure 23(b)(3), for settlement purposes only:

> All consumers who incurred an overdraft fee or insufficient funds event fee that a bank attributed to an Earnin withdrawal, beginning on September 3, 2015 through May 28, 2020.

Earnin has identified approximately 273,073 of its users that meet the Settlement Class definition. Settlement ¶ III. Not included in the Settlement Class are "the Court, the officers and directors of Defendant, persons who have been separately represented by an attorney and entered

into a separate settlement agreement, and persons who timely and validly request exclusion from the Settlement Class." *Id.*

The Settlement Class definition is narrower than the class proposed in the operative complaint, *see* Procedural Guidance ¶ 1.a., which includes "[a]ll persons who used the Earnin Service and paid tips to Earnin." Dkt. 1 at 9. The proposed Settlement Class is different because it aligns with information obtained in discovery about which Earnin users incurred overdrafts and for what time period.

**B.    The Expected Recovery for the Class**

Class Members can expect meaningful monetary recovery in addition to injunctive relief. *See* Procedural Guidance ¶ 1.e. That recovery compares well to Class Members' expected recovery if they were to prevail on their claims. In total, Earnin will contribute $3 million into a settlement fund, and subject to the terms of the Agreement, in addition provide up to $9.5 million in forgiveness of previously unpaid cash outs for those Settlement Class Members whose accounts have been temporarily suspended due to nonpayment of cash outs who wish utilize the Earnin Express platform (subject to onboarding requirements)—a total settlement benefit of $12.5 million.

Under the Settlement, the $3 million Settlement Amount will, after deductions for fees, costs, and any potential service awards, be divided *pro rata* among Settlement Class Members. Settlement ¶ IV.

With respect to Settlement Class Members whose accounts have been temporarily suspended due to nonpayment of cash outs, Defendant through the Class Settlement process shall allow such Settlement Class Members to use Earnin Express (subject to account onboarding requirements, including federal law), and until an aggregate amount of $9.5 million is forgiven across such suspended Settlement Class Members, these such Settlement Class Members shall not be required to repay previously unpaid cash outs as a part of the application to Earnin Express, with such forgiveness occurring automatically upon completion of the onboarding process to Earnin Express. *Id.*

In addition to that monetary relief, the Settlement provides for significant changes to Earnin's practices that will provide improved consumer protections and disclosures to Earnin Settlement Class Members and other Earnin users. Those improvements include:

- Earnin agrees to provide additional disclosures regarding the risk of third-party fees and the company's lack of control over the sequencing of third-party bank transactions in its terms of service for one year, beginning from the date of Final Approval, assuming Earnin remains a going concern.

- Earnin agrees to refund all subsequent overdraft and insufficient funds fees that are the result of Earnin debiting a customer's account on a day other than the customer's regularly scheduled payday, upon receipt of adequate notice and proof by the customer for one year, assuming Earnin remains a going concern.

- Earnin agrees to bundle individual payments for restoration that a user authorizes in a pay period as a single debit, up to a maximum of $35.00, for one year, beginning from the date of Final Approval, assuming Earnin remains a going concern.

- Earnin agrees to either partner with a provider of, or itself enable, add-on features that will provide tools for Earnin customers to negotiate overdraft fees with their banks for one year, beginning from the date of Final Approval, assuming Earnin remains a going concern and assuming Earnin continues to offer products that debit third-party bank accounts during that time.

- Earnin agrees that it will not consider individual tipping behavior as a factor in determining a customer's max limit for one year, assuming Earnin remains a going concern and assuming Earnin continues to offer services with a tip option during that time.

- Earnin agrees that it will offer the option to tip $0 for each cash out for one year, assuming Earnin remains a going concern and assuming Earnin continues to offer its cash out product.

- Earnin agrees that it will comply with all applicable federal and state law, and NACHA operating rules in completing restores from consumer accounts.

Settlement ¶ IV (2).

As explained below in Part V, those benefits are sufficiently fair, reasonable, and adequate measured against the Release that Settlement Class Members will offer in exchange, given the risks inherent in continued litigation.

### C.    The Settlement's Notice Program

The Settlement's Notice Program contemplates outreach to Settlement Class Members in two ways: direct e-mail notice and notice on the Settlement Website. That is consistent with this District's Procedural Guidance, which suggests "mail, email, and/or social media as appropriate" and a "settlement website." Procedural Guidance ¶ 3. Earnin maintains a database of users' email addresses and will provide them to the class notice administrator so that notice may be sent to them. Settlement ¶ VI.

Also consistent with this District's Guidance, Class Counsel has retained an experienced notice provider and settlement administrator, KCC LLC & RicePoint Administration ("KCC"), to help prepare plain-language notices that include sufficient information for Settlement Class Members to understand their rights and options, as well as ways to get more information. *See generally* Settlement, Exs. A-B (notices).

### D.    The Plan of Allocation and Claims Process

Under the Settlement's Plan of Allocation, *see* Procedural Guidance ¶ 1.f, the net amount of the Settlement Amount (*i.e.*, the remainder after deducting for Court-approved fees, costs, and service awards) will be divided among eligible class members *pro rata* based on the number of overdraft fees each Settlement Class Member incurred during the class period as a result of Earnin transactions. *See* Settlement ¶ IV (1)(b).

The process of paying Settlement Class Members will be straightforward, with minimal burden on claimants and at minimal cost to the Settlement Class. *See* Procedural Guidance ¶ 1.g. No claim form will be required; instead, using its database of user information, Earnin will facilitate the Settlement Administrator's direct payments to Settlement Class Members. Settlement ¶ IX. For Settlement Class Members who are customers of Defendant at the time of the distribution, within ten days of the Effective Date, Earnin will credit the customer's linked checking account in the amount of the Individual Payment they are entitled to receive. *Id*. For Settlement Class Members who are not Earnin customers at the time of the distribution, the Settlement Administrator will send them an email with a link allowing for the electronic transmission of Individual Payments by electronic money transmission services. *Id.*

### E. Fees, Costs, and Service Awards

Class Counsel may not seek attorneys' fees of greater than 30% of the Settlement Amount, in addition to reimbursement for costs reasonably expended, Settlement ¶ XI(2), an amount within range of this Circuit's 25% "benchmark" for fees in class settlements. The Settlement allows the two Named Plaintiffs to seek service awards up to $2,500 to be approved by the Court. *Id.* ¶ XI(1). These awards fall well within the range approved by courts in this Circuit. *See Carnes v. Atria Senior Living, Inc.*, No. 14-CV-02727-VC, Order Grant. Mot. for Attorneys' Fees, Costs, and Service Award at 7–9, ECF 115 (N.D. Cal. Jul. 12, 2016) (citing cases). And these fees and awards were negotiated only after the parties reached an agreement in principle on the relief for the Settlement Class. Declaration of Jeffrey Kaliel in Support of Motion for Preliminary Approval ("Kaliel Decl.") ¶ 2.

### F. Release of Claims

In exchange for Class benefits, the Settlement provides a release of claims for all defendants, parents, subsidiaries, officers, employees, and affiliates. Settlement ¶ X. The release covers all claims class members may have against Earnin related to their use of the application. *Id.* Though the release extends to more than the Overdraft Claims, such releases are common in class settlements where all claims that arise from the same nucleus of facts. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.") (internal quotation, citation omitted); Newberg on Class Actions § 18:21 (5th ed.) (the "release of claims that go beyond the particular claims pleaded in the class's complaint, so long as the claims are transactionally related to those at the heart of the case" is "not terribly controversial"); Procedural Guidance at ¶ 1.c.

### G. Proposed Schedule for Final Approval

Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class Action Settlement, filed herewith, includes this proposed schedule for the approval process:

| Date | Event |
|------|-------|
| August 6, 2020 (or no more than 10 days from the filing of the motion for preliminary approval) | Defendants shall serve a notice of the proposed Settlement on appropriate state officials per CAFA. |
| 30 days after Preliminary Approval Order is entered | Notice Deadline |
| No more than 7 days after the Notice Deadline | Settlement Administrator shall provide Parties with confirmation of completion of Mail Notice Program and posting of Notice on the Settlement Website. |
| 60 days after the Notice Deadline | Objection and Opt-Out Deadline |
| No later than 21 days prior to the Objection Deadline | Deadline for Plaintiffs to file Motion for Final Approval and for attorneys' fees, costs, and expenses. |
| No later than 14 days prior to Final Approval Hearing | Parties shall file responses to any objections, and replies in support of final approval |
| No more than 10 days prior to Final Approval Hearing | Deadline for Parties to file with the Court the opt-out notices and list of excluded individuals provided by the Settlement Administrator. |
| On or after November 4, 2020 (no earlier than 90 days after the CAFA Notices are mailed) | Final Approval Hearing |

## V.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The Court will likely be able to grant final approval to the proposed Settlement as fair, reasonable, and adequate because it is procedurally sound and provides substantial monetary and non-monetary recovery for Class Members. It does so while avoiding the risks, delay, and uncertainty inherent in continued litigation. Prominent among those are Earnin's defenses based on the novelty of its business model and the very real possibility that, even if Plaintiffs were to prevail on their claims, Earnin may not be able to pay the resulting judgment.

## A.     The Settlement is Procedurally Fair.

The Court will likely be able to approve the Settlement under Rule 23(e)(2) because the "conduct of the litigation and of the negotiations leading up to the proposed settlement," demonstrate it is the result of contested litigation and arm's length negotiations. *Id.* Also, the Settlement meets the Ninth Circuit's "*Bluetooth*" factors.

### 1. The Settlement is the result of arm's length negotiations.

The Settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In negotiating the settlement, the Parties' experienced counsel benefitted from the guidance and assistance of Judge Beeler, reinforcing the procedural fairness of the Settlement. *See Satchell v. Fed. Express Corp.*, No. 03-CV-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Guilbaud v. Sprint Nextel Corp.*, No. 3:13-CV-04357-VC, 2016 WL 7826649, at *1 (N.D. Cal. Apr. 15, 2016) (approving settlement where after "initial exchanges of information and discovery, the Parties entered into private mediation before respected neutral mediator . . . to try to resolve the claims"); Fed. R. Civ. P. 23, Advisory Comm. Notes (2018) ("the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

Here, the negotiation included two mediations before Judge Beeler by videoconference, on April 7 and May 28, 2020, additional follow up calls with Judge Beeler, and many calls and email exchanges between counsel spanning roughly eight months, continuing up until the Parties executed the Settlement on July 23 and 24, 2020. *See generally* Settlement ¶ I.D-F; Kaliel Decl. ¶ at 2. That lengthy, adversarial, court-assisted process created a procedurally fair outcome.

### 2. Plaintiffs obtained significant discovery in the context of the mediation.

While this case is admittedly in its early phase, Class Counsel engaged in significant factual discovery and research as part of the litigation and negotiation process. *See* Kaliel Decl. ¶ 3; *see also In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported "district court's conclusion that the Plaintiffs had sufficient information to make an informed decision").

Earnin provided confirmatory discovery to Plaintiffs under Federal Rule of Evidence 408, allowing Plaintiffs assess the strength of their claims, the potential recovery, and Earnin's stressed financial condition. *See* Kaliel Decl. ¶ 3; *see also Hart v. Colvin*, No. 15-CV-00623-JST, 2016 WL 6611002, at *8 (N.D. Cal. Nov. 9, 2016) ("While no formal discovery has taken

place, the parties exchanged some documents and information that allowed the parties to draft and refine the terms of the Settlement Agreement, and Plaintiffs' own investigation resulted in useful documents[.]") (internal quotation omitted). Much of that information was also shared with, and evaluated by, Judge Beeler.

Given the posture of this case, the amount of discovery weighs in favor of approval.

### 3.    The settlement satisfies the *Bluetooth* factors

Where the parties reach a settlement prior to formal class certification, courts often go beyond the usual fairness factors to sniff out possible collusion. *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016). Rather than "kick[] the can down the road," *Cotter*, 193 F. Supp. 3d at 1037, this Court should at this stage analyze the "*Bluetooth*" factors: whether class counsel receives a disproportionate distribution of the settlement, whether the parties negotiated a "clear sailing" arrangement for attorneys' fees, and whether the parties negotiated for fees not awarded to revert to defendants rather than be added to the class fund. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The Settlement meets all the *Bluetooth* factors, reflecting that Class Counsel have not "allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* First, while Plaintiffs' counsel have not yet requested attorneys' fees, the requested amount will be within range of the Ninth Circuit's 25% benchmark. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). And the Parties did not discuss fees until after reaching an agreement on the material terms of the Settlement. Settlement ¶ I.G. Second, the Settlement Agreement contains no "clear sailing" provision. Third, the Settlement provides that any funds not awarded will go to a *cy pres* beneficiary; none will revert to Earnin. Settlement Agreement ¶ IX.3. *Cf., e.g.*, *Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 5076203, at *11 (N.D. Cal. Sept. 20, 2016); *see also* Fed. R. Civ. P. 23, Rules Advisory Comm. Notes (2018) ("Because some funds are frequently left unclaimed, the settlement agreement ordinarily should address the distribution of those funds.").

**B.    The Settlement is Substantively Fair.**

The procedurally fair negotiation process resulted in a Settlement that is substantively generous to the class. The Court will likely be able to finally approve that Settlement because the relief it provides is reasonable given the risks of ongoing litigation, and because that relief will be equitably distributed to the Settlement Class by an efficient claims process. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D) (listing "substantive" factors for final approval).

**1.    While strong on its merits, Plaintiffs' case faces substantial barriers.**

On their merits, many of Plaintiffs' claims are strong: Earnin caused class members to incur the very kind of fees—overdraft fees—that Earnin promised to protect them from. Nonetheless, Earnin could raise several colorable defenses. And given the novelty of Earnin's business model, the resolution of Plaintiffs' claims would likely involve lengthy and uncertain appeals. *See* Fed. R. Civ. P. 23(e)(2)(C)(i) (directing courts to consider "the costs, risks, and delay of trial and appeal"); *Uppal v.CVS Pharmacy, Inc., WL* 10890652, at *1, (N.D. Ca. 2015) (settlement would avoid "substantial costs, delay and risks that would be presented by the further prosecution of the litigation").

Earnin's business model presented a unique litigation challenge to Plaintiffs from a legal and regulatory perspective. While regulators in many states have begun to examine Earnin's business and sought to assess how it fits into existing regulatory regimes, many of Plaintiffs' claims are untested against a business like Earnin. As of this filing, Plaintiffs believe that no state regulatory agency has taken action against Earnin; further, Earnin was exempted from the Consumer Finance Protection Bureau's 2017 Payday Lending rules. From Plaintiffs' perspective, existing laws and regulations apply to the substance of Earnin's business as a money lender. Plaintiffs recognize, however, the substantial risk from litigating these issues.

In addition, Earnin's status as a new venture means Plaintiffs had to make a sober assessment of Earnin's financial status and the availability of recoverable damages. Plaintiffs therefore requested and received from Earnin sufficient financial information to assess whether continued litigation was likely to result in a large, recoverable damages award for the Settlement Class. Kaliel Dec. ¶ 3.

Finally, class certification presented a major hurdle to recover for the Settlement Class. While Plaintiffs believe a national class can be certified applying California law based on Earnin's presence in California and the California choice of law provision in its terms, Earnin could make two main arguments opposing class certification. First, Earnin will likely argue that nationwide Classes of borrowers cannot be certified because Plaintiffs bring causes of action under California statutes. Second, Earnin will likely argue that Plaintiffs' UCL claim require a showing of reliance, which will necessarily differ between individual Class members. Plaintiffs have strong arguments in response, but class certification is by no means a foregone conclusion.

And, given those substantive and procedural uncertainties, the Settlement merits preliminary approval because it provides appropriate—and certain—relief to the Settlement Class.

### 2.    The amount offered in settlement is adequate.

In the face of those uncertainties, the amount offered in the Settlement is considerable. In reaching this conclusion about the Settlement, Class Counsel assessed the value of the claims asserted in the Complaint. They also weighed the value of other potential claims that were *not* included in the operative Complaint. *See Cotter v. Lyft, Inc*., No. 13-CV-04065-VC, 2017 WL 1033527, at *2 (N.D. Cal. Mar. 16, 2017) ("What matters is that the settlement terms are fair and reasonable in light of all the claims being released (asserted or not), that class members receive appropriate notice of the proposed settlement, and that class members be given the chance to opt out of the class if they wish to preserve their own claims."); Procedural Guidance ¶ 1.e.

At the outset, it is important to stress that when an Earnin user paid an overdraft fee as a result of an Earnin transaction, that fee (which averages between $28-$35 nationwide) is paid to the bank that assessed that fee—not to Earnin. Indeed, Earnin receives no portion of the fee amount.  This, of course, presents several legal difficulties for Plaintiffs seeking to recover those fees from Earnin.  Nonetheless, Earnin here has agreed to reimburse its users for $3 million in overdraft fees the company did not receive or benefit from.

If a jury were to award Plaintiffs and each member of the proposed class of approximately 250,000 Settlement Class Members a single overdraft fee—a highly uncertain outcome—the Class may have recovered a compensatory award of between $7 million and $9 million. If a jury were to award the Settlement Class *all* their overdraft fees—an even more uncertain outcome—Plaintiffs estimated that could result in a compensatory award of between $15 and $18 million. While that is clearly more than the $3 million offered in settlement, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004).

The amount recovered is particularly reasonable given Earnin's financial condition, disclosed in confirmatory discovery. *See Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (defendant's precarious financial position weighs in favor of approval). Because of the COVID-19 pandemic's impact on Earnin's business model—an impact that remains ongoing for the foreseeable future—Plaintiffs and Settlement Class Members face the very real possibility that they could prevail on all their claims only to find that Earnin is unable to pay a judgment. Worse, they could find themselves in the unfavorable position of unsecured creditors in a bankruptcy proceeding.

### 3.    The plan of allocations is fair, adequate, and reasonable.

The Settlement's straightforward proposal on how to allocate those funds is fair, adequate, and reasonable. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008). It is also cost-effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D) (directing courts to consider claims process).

First, the claims process will be cost-effective because Earnin will distribute the settlement funds through direct deposits to existing customers. To assist with that, the Parties propose KCC as a settlement administrator. Proposed Class Counsel selected KCC after a competitive bidding process. Kaliel Decl. ¶ 4; *see also* Procedural Guidance ¶ 2. Plaintiffs' counsel has experience working with KCC on eight matters in the past two years. Kaliel Decl. ¶

5; *see* Procedural Guidance ¶ 2. The Settlement Administrator estimates the notice and administration will cost between approximately $55,000 and $70,000. Kaliel Decl. ¶ 4. Those costs will be paid from the Settlement Amount. Settlement ¶ IV. The estimated cost of administering this Settlement involving hundreds of thousands of users is more than reasonable in relation to the value of the Settlement.

Second, that claims process will result in class members receiving an equitable share of the Settlement Fund. *See Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-CV-00406-DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."). Each Settlement Class Member's individual *pro rata* payment amount will be determined according a simple formula:

(Net Settlement Fund/Total Number of Overdraft Transactions)

X

Number of Overdraft Transactions per Settlement Class Member as suggested in Earnin's business records.

Settlement ¶ X.

So, for example, if the Net Settlement Fund is $2 million dollars, and there have been 500,000 total overdraft charges for Settlement Class Members, a class member who incurred one overdraft charge due to Earnin will receive $4, a customer who incurred 5 overdraft charges will receive $20, and so on. Based on Class Counsel's experience, that will provide a fair recovery for Settlement Class Members based on the value of the claims asserted. (In Appendix A, Class Counsel provide information regarding prior settlements pursuant to paragraph 11 of the District's Procedural Guidance.)

Finally, regarding notice, Rule 23 requires the Court to direct the best notice practicable to all class members who would be bound by the proposed Settlement. *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The proposed notice program, designed and implemented by respected national firm

15

KCC, meets these standards. Earnin will provide notice under the Class Action Fairness Act, 28 U.S.C. §§ 1711-15. Settlement ¶ VII; *see also* Procedural Guidance ¶ 10.

## VI.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS

Plaintiffs respectfully request that the Court certify the Settlement Class. Rule 23 governs class certification, including in settlements. However, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.    The Class Meets the Prerequisites of Rule 23(a).

#### 1.    The Class is sufficiently numerous.

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc*., 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here it is easily established. Earnin has identified over 250,000 Settlement Class Members.

#### 2.    There are common questions of both law and fact.

"Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). "Even a single [common] question" will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quotation and citation omitted).

Here, the Class claims directly derive from Earnin's common course of conduct of processing withdrawals in a manner to cause Settlement Class Members to incur bank fees. That common course of conduct raises common questions, the resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *Id.* at 350. And as Plaintiffs allege that their and the Class's "injuries derive from [D]efendants' alleged 'unitary course of conduct,'" they have "'identified a unifying thread that warrants class treatment.'" *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 290 (S.D.N.Y. 2012) (citations

omitted). Indeed, courts routinely find commonality where the class's claims arise from a defendant's uniform course of conduct. *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006) ("The Court finds that the class members' claims derive from a common core of salient facts, and share many common legal issues. . . . The commonality requirement of Rule 23(a)(2) is met."); *Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014) ("Here, Plaintiff argues his RICO claim raises common questions as to 'Trump's scheme and common course of conduct, which ensnared Plaintiff[] and the other Class Members alike.' The Court agrees."). Rule 23's commonality requirement is thus satisfied here.

### 3.    The Settlement Class Representatives' claims are typical of the Class.

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties'" be "'typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons*, 754 F.3d at 685.

Here, the experiences of the Settlement Class Representatives match the experiences of thousands of other Earnin users: Their use of the Earnin app caused them to incur overdraft fees. Rule 23's typicality requirement is met.

### 4.    The Named Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Settlement Class.

Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." To determine adequacy, courts ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).

First, Plaintiffs do not have any interests antagonistic to the other Class Members and will continue to vigorously protect their interests. *See, e.g.*, *Clemens v. Hair Club for Men, LLC*, 15-CV-01431-WHA, 2016 WL 1461944, at *3 (N.D. Cal. Apr. 14, 2016). The Named Plaintiffs and Settlement Class Members are entirely aligned in their interest in proving that Earnin caused them to incur fees, having Earnin compensate them for any damages that resulted, and pursuing the maximum possible non-compensatory damages.

Second, the Named Plaintiffs understand their duties as class representatives, have agreed to consider and protect the interests of absent Settlement Class Members, and have actively participated in this litigation and settlement. Kaliel Decl. ¶ 6. All of this together is more than enough to meet the adequacy requirement. *See Trosper v. Styker Corp*., No. 13-CV-0607-LHK, 2014 WL 4145448, at *43 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.") (internal quotations and citations omitted).

Third, Class Counsel are highly qualified lawyers who have successfully prosecuted high-stakes complex cases and consumer class actions, and have devoted the resources necessary to see this case through despite great risk. *See generally* Kaliel Decl. Exs. 1-3 (firm resumes).

## B.    The Requirements of Rule 23(b)(3) Are Met.

Plaintiffs seek certification under Rule 23(b)(3). Courts certify Rule 23(b)(3) classes when: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This Class satisfies both prerequisites.

### 1.    Common issues of law and fact predominate.

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:49, at 195–96 (5th ed. 2012)). "When

'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA Charles Alan Wright et al., *Federal Practice & Procedure* § 1778, at 123–24 (3d ed. 2005)). "For purposes of a settlement class, differences in state law do not necessarily, or even often, make a class unmanageable." *Jabbari v. Farmer*, WL 4046029, at *4 (9th Cir., July 20, 2020).

The Ninth Circuit favors 23(b)(3) treatment of claims stemming from a "common course of conduct," like the practices Plaintiffs allege here. *See In re First Alliance Mortg. Co*., 471 F.3d 977, 990 (9th Cir. 2006); *Hanlon v. Chrysler Corp.,* 150 F.3d at 1022–23 (9th Cir. 1998). While each Settlement Class Member may have individualized circumstances, predominance "is not . . . a matter of nose-counting." *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016) (citation omitted). "Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis[.]" *Id.*; *see also Jabbari*, *supra*, at *2 ("If a common question will drive the resolution, even if there are important questions affecting only individual members, then the class is 'sufficiently cohesive to warrant adjudication by representation.'" (quoting *Amchem Prods., Inc.*, 521 U.S. at 623–24).

Here, the central questions regarding the claims center on Earnin's allegedly faulty withdrawal practices and uniform misrepresentations to Settlement Class Members. Such common issues regularly predominate in cases based on "standardized policies and practices applied on a routine Basis[.]" *Ellsworth v. U.S. Bank, N.A*., No. 12-2506, 2014 WL 2734953, at *20 (N.D. Cal. June 13, 2014) (citing *Gutierrez v. Wells Fargo Bank*, No. 07-5923, 2008 WL 427999550, at *17 (N.D. Cal. Sept. 11, 2008)). Common questions also predominate in cases where central questions are whether a defendant's failure to disclose information "would be likely to deceive a reasonable consumer[,]" and whether a defendant was engaged in a common "scheme." *See Parkinson v. Hyundai Motor Am*., 258 F.R.D. 580, 596 (C.D. Cal. 2008) (citing

*Williams v. Gerber Prods. Co*., 523 F.3d 934, 938 (9th Cir. 2008) (discussing reasonable consumer standard)).

### 2.    Class treatment is superior in this case.

Rule 23(b)(3)'s "superiority" element "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.

Here, class treatment is superior to the litigation of hundreds or thousands of individual, largely low-value claims. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Id*. The damages sought by each Settlement Class Member are not so large as to weigh against certification. *See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-CV-02104-SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008). The sheer number of separate trials that would be required also favors certification. *Id.*

Additionally, the Class is defined by objective, transactional facts: Earnin's own records of Settlement Class Member's overdraft fees. Accordingly, identifying the class will not present undue management challenges. *See In re Checking Account Overdraft Litig*., 307 F.R.D. 656, 678 (S.D. Fla. 2015) ("Class Members are readily ascertainable through objective criteria: Wells Fargo's own records of individuals who were assessed overdraft fees. . . . Such work will be merely ministerial in nature . . . .").

### VII.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve this non-reversionary Settlement, provisionally certify the Settlement Class, conditionally appoint the undersigned as Settlement Class Counsel and the Plaintiffs as the Settlement Class Representatives, order dissemination of notice to Class Members, set a date for the final approval hearing, and stay all pending related cases until and if the Court denies approval of this Settlement.

DATED this 27th day of July, 2020.

KELLER ROHRBACK L.L.P.

By  *s/ Alison E. Chase*
  Alison E. Chase (SBN 226976)
  Matthew J. Preusch (SBN 298144)
  Christopher L. Springer (SBN 291180)
  801 Garden Street, Suite 301
  Santa Barbara, CA 93101
  (805) 456-1496
  Fax (805) 456-1497
  achase@kellerrohrback.com
  mpreusch@kellerrohrback.com
  cspringer@kellerrohrback.com

By  *s/  Lynn A. Toops*
  Lynn A. Toops, *pro hac vice*
  Vess Allen Miller (SBN 278020)
  Lisa M. La Fornara, *pro hac vice*
  Cohen and Malad, LLP
  One Indiana Square, Suite 1400
  Indianapolis, IN 46204
  (317) 636-6481
  Fax: 317-636-2593
  ltoops@cohenandmalad.com
  vmiller@cohenandmalad.com
  llafornara@cohenandmalad.com

By  *s/ Jeffrey Douglas Kaliel*
  Jeffrey Douglas Kaliel (SBN 238293)
  Sophia Goren Gold (SBN 307971)
  Kaliel PLLC
  1875 Connecticut Avenue NW, 10th Floor
  Washington, DC 20009
  (202) 350-4783
  jkaliel@kalielpllc.com
  sgold@kalielpllc.com

## <u>CERTIFICATE OF SERVICE</u>

I, Alison E. Chase, hereby certify that on this 27th day of July, 2020, I electronically filed Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*s/ Alison E. Chase*
Alison E. Chase