UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MARY PERKS and STANLEY ALEXANDER, individually and on behalf of all others similarly situated.,

                    Plaintiffs,

        v.

ACTIVEHOURS, INC. D/B/A EARNIN,

                    Defendant.

Case No. 5:19-cv-05543-BLF

Notice of Motion and Plaintiffs' Unopposed Motion for Final Approval of Class Settlement and for Approval of Attorneys' Fees, Costs, and Service Awards

Date:      March 25, 2021
Time:      9:00 a.m.
Judge:     Hon. Beth Labson Freeman
Room:      Courtroom 3, 5th Floor

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

5:19-CV-05543-BLF

1

## **TABLE OF CONTENTS**

2

I.     Introduction ..................................................................................................... 1

II.    Statement of Facts ........................................................................................... 2

       A.    Earnin and its challenged practices. ...................................................... 2

       B.    Overview of the litigation, settlement, and preliminary approval .......... 2

       C.    Notice to the Settlement Class and regulators ....................................... 3

       D.    No member of the Settlement Class opted-out or objected to the Settlement, and no
             regulator objected......................................................................................... 4

III.   Legal standard ................................................................................................. 4

IV.    The Court should grant final approval to the Settlement. ............................... 5

       A.    Notice to the Settlement Class was adequate.......................................... 5

       B.    The Settlement Class meets the requirements for certification for purposes of
             entering judgment on the Settlement. .................................................... 6

       C.    The Settlement is fundamentally fair, reasonable, and adequate. ............ 6

             1.    The Rule 23(e)(2)(A) and (B) factors, and their related *Hanlon* factors, favor
                   final approval. ............................................................................. 8

             2.    Rule 23(e)(2)(C) factors, and their related *Hanlon* factors, favor final
                   approval. ...................................................................................... 9

             3.    Rule 23(e)(2)(D), and its related *Hanlon* factors, favor final approval. ...... 12

             4.    The lack of any objections or opt-outs strongly favors final approval. ........ 12

V.     The Court should approve the application for an award of attorneys' fees, costs, and service
       awards. .......................................................................................................... 13

       A.    The requested attorneys' fees are reasonable. ...................................... 13

             1.    The requested fee is reasonable under the "percentage of the recovery"
                   method................................................................................................ 14

             2.    The requested fee is reasonable under the lodestar method...................... 17

       B.    The requested cost and expense reimbursement is reasonable............................. 19

       C.    The fees for notice and settlement administration are reasonable........................... 19

       D.    The requested service awards are reasonable. ...................................... 20

VI.    Conclusion ..................................................................................................... 20

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AN APPLICATION FOR
ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

-i-                                                                                        5:19-CV-05543-BLF

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aboudi v. T-Mobile USA, Inc.*,
   No. 12-CV-2169-BTM, 2015 WL 4923602 (S.D. Cal. Aug. 18, 2015) ................................18

*Bickel v. Sheriff of Whitley Cnty.*,
   No. 1:08-CV-102-TLS, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) ................................6

*In re Bluetooth*,
   654 F.3d at 941 ..........................................................................................................14, 18

*Bower v. Cycle Gear, Inc.*,
   No. 14-CV-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) .............................17

*In re Coordinated Pretrial Proceedings*,
   109 F.3d 602 (9th Cir. 1997) ............................................................................................14

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................ *passim*

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................................... *passim*

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ................................................................................................20

*Hendricks v. Starkist Co.*,
   No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016)............................17

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-CV-1290-BEN, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)......................................19

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
   No. 14-MD-02541- CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ...............................19

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ...............................................................................................5

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..............................................................................13

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .............................................................................................16

*Rainbow Bus. Solutions v. MBF Leasing LLC,*
    No. 10-CV-01993-CW, 2017 WL 6017844 (N.D. Cal. Dec. 5, 2017) ...................................19

*Reyes v. Bakery & Confectionary Union & Indus. Int'l Pension Fund,*
    281 F. Supp. 3d 833 (N.D. Cal. 2017) ...........................................................................18, 19

*Rinky Dink, Inc. v. World Bus. Lenders, LLC,*
    No. C14-0268-JCC, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016)....................................10

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ...........................................................................................13

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
    *904 F.2d 1301 (9th Cir.1990)* .....................................................................................14, 15

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...........................................................................................14

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...........................................................................12

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) .............................................................................................7

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) .........................................................................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,*
    895 F.3d 597 (9th Cir. 2018) ...........................................................................................8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) ...........................................................................................14

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ...........................................................................3

**Other Authorities**

Federal Rule of Civil Procedure 23 ......................................................................... *passim*

**NOTICE OF MOTION AND UNOPPOSED MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **March 25, 2021, at 9:00 a.m.**, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Jose Courthouse, located at 280 South 1st Street, San Jose, California 95113, 5th Floor, Courtroom 3, before the Honorable Beth Labson Freeman, Plaintiffs Mary Perks and Stanley Alexander, on behalf of themselves and the certified Settlement Class, will and hereby do move for an order granting final approval to the Settlement, certifying the Settlement Class for purposes of entering judgment on the Settlement, approving payment of attorneys' fees and expenses to Settlement Class Counsel, and approving payment of a service award to the Settlement Class Representatives.

Plaintiffs request that the Court enter the proposed Order Granting Final Approval to Class Settlement and Approving Attorneys' Fees, Costs, and Service Awards that has been tendered to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

After preliminary litigation and lengthy settlement negotiations, assisted by Magistrate Judge Laurel Beeler, Plaintiffs and Defendant ActiveHours, Inc. d/b/a Earnin ("Earnin") reached a proposed Settlement Agreement, ECF No. 45-2 (the "Settlement"), to which this Court granted preliminary approval on October 30, 2020. ECF No. 50 (the "Preliminary Approval Order"). Notice of the Settlement has now been disseminated to over 95% of the class. Not a single member of the Settlement Class (nor any governmental regulator) has objected. Not a single member of the class has opted out. With this excellent response from the class, it is clear that the Settlement is "fair, reasonable, and adequate." Settlement Class Counsel respectfully submit that the Court should grant final approval, certify the Settlement Class for purposes of entering judgment, and approve the payment of reasonable attorneys' fees, costs, and service awards.

## II.    STATEMENT OF FACTS

### A.    Earnin and its challenged practices

Earnin is a novel financial technology company that promises its users a seemingly simple service: early access to the value of their earned but unpaid income, with Earnin recouping payment from the user's bank account on the user's next payday. Earnin promises to provide this service with no fees, costs, or hidden charges. Plaintiffs alleged that, contrary to this promise, hundreds of thousands of Earnin users experienced practices that caused them to incur overdraft fees from their banks.

### B.    Overview of the litigation, settlement, and preliminary approval[1]

After prolonged settlement negotiations, including both direct discussions between the parties and several mediation sessions with Magistrate Judge Laurel Beeler, the parties reached the proposed Settlement. After a hearing on October 29, 2020, the Court granted preliminary approval to the settlement. *See generally* Preliminary Approval Order. The Preliminary Approval Order certified the Settlement Class for purposes of notice, approved the proposed forms of notice and directed that they be disseminated to members of the Settlement Class, established deadlines for persons to exclude themselves from the Settlement Class or to object to the Settlement, and set a hearing to consider final approval of the Settlement (along with approval of attorneys' fees and costs to Settlement Class Counsel and a service award to the Settlement Class Representatives). *Id.* The Court concluded, on a preliminary basis, that the Settlement complied with the Northern District of California's *Procedural Guidance for Class Action Settlements* and that it would "'likely be able to' grant final approval to the Settlement." *Id.* at 3.

The benefits of the Settlement are set forth more fully in the Settlement Agreement and the Motion for Preliminary Approval, but the highlights of the Settlement's benefits include:

---

[1] A more detailed recitation of facts and procedural background is contained in the Motion for Preliminary Approval. ECF No. 45.

- a $3 million Settlement Fund to be directly distributed (no claims process required) to the Settlement Class Members *pro rata* after deduction of payments approved by the Court, Settlement ¶ IV;

- up to $9.5 million in forgiveness for previously unpaid cash-outs for those Settlement Class Members whose accounts have been temporarily suspended due to nonpayment and who wish to use Earnin Express (subject to account onboarding requirements, including federal law) as described in the Settlement Agreement, *id.*; and

- extensive and detailed injunctive relief that will address future overdraft issues and provide meaningful practice changes for Earnin's users. *Id.*

In its Preliminary Approval Order, the Court acknowledged the benefits of the Settlement and found, on a preliminary basis, that "the Settlement's provisions for consideration consisting of [these benefits] are likely to be approved as fair, adequate, and reasonable compensation to Settlement Class Members in exchange for their release of claims against Earnin." Preliminary Approval Order at 3-4.

### C.    Notice to the Settlement Class and regulators

In accordance with the Preliminary Approval Order, the Settlement Administrator provided the Court-approved notice to the Settlement Class and provided the notice to regulators required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See generally* Declaration of Karen Rogan re: Notice Procedures ("Notice Decl."). Specifically, on August 4, 2020, the Settlement Administrator mailed the required CAFA notice to United States Attorney General and the Attorneys General of all 50 states, plus the 5 U.S. Territories. Notice Decl. ¶ 3. On November 30, 2020, the Settlement Administrator established the settlement website with the long-form notice and relevant case documents. *Id.* ¶ 10. At the same time, the Settlement Administrator established a toll-free number for members of the Settlement Class to call to obtain additional information. *Id.* ¶ 11.

The Class List included 273,071 individuals; e-mail addresses were available for all but 217 class members. *Id.* ¶ 5. On November 30, 2020, the Settlement Administrator caused email notice to be sent to the 272,854 email addresses on the Class List and also sent text messages to

the 217 persons whose emails were not on the Class List. *Id.* ¶¶ 6, 9. Of the initial 272,854 emails sent, 253,316 were successfully received and only 19,538 bounced back, a 92.87% success rate. *Id.* ¶ 7. The Settlement Administrator was able to obtain current email addresses for 7,271 of the 19,538 emails that bounced back, and then sent a second notice to those email addresses on December 16, 2020, which had a success rate of 81.67%. *Id.* ¶ 8. In total, notice was successfully sent to more than 95% of the 273,071 individuals on the Class List. *See id.* ¶¶ 6–9.

> ### D.    No member of the Settlement Class opted-out or objected to the Settlement, and no regulator objected.

Despite the large class size of over a quarter million people and the over 95% successful notice campaign, not a single member of the Settlement Class objected to the Settlement or chose to opt-out, strongly indicating that members of the Settlement Class view the Settlement as a fair, reasonable, and adequate compromise. *Id.* ¶¶ 13–14. Likewise, no Attorney General or other regulator objected to the Settlement, again indicating that the Settlement is fundamentally fair. *Id.* ¶ 4.

## III.    LEGAL STANDARD

A court may grant final approval to a class action settlement once it determines that the proposed class meets the requirements for certification under Federal Rule of Civil Procedure 23 and that the settlement reached on behalf of the class is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). The Court must also find as a threshold matter that adequate notice of the proposed settlement has been given to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025–27 (9th Cir. 1998).

In addition, the Northern District of California's *Procedural Guidance for Class Action Settlements* advises that, in connection with Final Approval, the following information should be presented:

- *Class Members' Response:* The motion for final approval should include information about, *inter alia*, the number of undeliverable notices, the claims received, opt-outs and objections.

---

- ***Attorneys' Fees:***  Requests for attorneys' fees must include lodestar information.

- ***Incentive Awards:*** "All requests for incentive awards must be supported by evidence of the proposed awardees' involvement in the case and other justifications for the awards."

Procedural Guidance for Class Action Settlements (Dec. 5, 2018).

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The Court should grant final approval because adequate notice has been given, the requirements for certification are met, and the Settlement is fundamentally fair, adequate, and reasonable.

### A.   Notice to the Settlement Class was adequate.

The notice provided in this case was exceptionally effective, meeting the highest standards set by the Federal Judicial Center.

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class." *Bickel v. Sheriff of Whitley Cnty.*, No. 1:08-CV-102-TLS, 2015 WL 1402018, at *2 (N.D. Ind. Mar. 26, 2015) (citing Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide* 3 (2010) ("It is reasonable to reach between 70–95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%.")).

Here, notice was directed to all Class Members, by one or two emails or by text, and no group was systematically left without notice. *See generally* Notice Decl. The fact that 95% of the

---

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

-5-                                                        5:19-CV-05543-BLF

1  Class received direct notice shows that the method of notice was highly effective and more than

2  adequate. *Bickel*, 2015 WL 1402018, at \*2.

   **B.    The Settlement Class meets the requirements for certification for
          purposes of entering judgment on the Settlement.**

   This Court previously found that the requirements for class certification under Federal

   Rules of Civil Procedure 23(a) and 23(b)(3) are met. Preliminary Approval Order at 3. Nothing

   has changed since the Court's Preliminary Approval order, except that members of the

   Settlement Class have shown uniform support for the Settlement after having received notice of

   it. The same facts that supported the Court certifying the Settlement Class at preliminary

   approval support class certification for final approval, and the Court can easily reaffirm

   certification of the Settlement Class for entry of judgment on the Settlement. *See, e.g.*, *In re

   Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at \*5 (N.D. Cal.

   July 22, 2019) (Labson Freeman, J.) (reaffirming class certification on final approval and noting

   that "[t]he Court concluded that these requirements [for class certification] were satisfied when it

   granted preliminary approval of the class action settlement . . . [and] [t]he Court is not aware of

   any new facts which would alter that conclusion.").

   **C.    The Settlement is fundamentally fair, reasonable, and adequate.**

   In the Preliminary Approval Order, the Court found that the settlement consideration

   provided was "likely to be approved as fair, adequate, and reasonable compensation to

   Settlement Class Members." Preliminary Approval Order at 3. That preliminary finding of

   fairness has since been strengthened by the fact that no Settlement Class Members opted out of

   or objected to the Settlement. Notice Decl. ¶¶ 13–14. Class Counsel respectfully submit that the

   Court should now find that the Settlement is fair, reasonable, and adequate for final approval.

   The Ninth Circuit instructs district courts to consider and balance multiple factors to

   assess whether a settlement is "fair, adequate, and free from collusion" under Rule 23(e).

   *Hanlon*, 260 F.3d at 1027. These factors are:

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citation omitted).

In addition to the *Hanlon* factors, the 2018 amendments to Rule 23 established a uniform set of factors courts must consider when determining whether a settlement is fair, reasonable, and adequate, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
> > (i)     the costs, risks, and delay of trial and appeal;
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"The notes of the Advisory Committee explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks*, 2019 WL 3290770, at \*6 (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P.

1  23(e)(2)). "[T]he underlying question remains this: Is the settlement fair?" *In re Volkswagen*

2  *"Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

3  In this case, each of the relevant factors under *Hanlon* and amended Rule 23(e)(2) favor

4  final approval of the Settlement as "fair, reasonable, and adequate."

5        1.   **The Rule 23(e)(2)(A) and (B) factors, and their related *Hanlon***
6             **factors, favor final approval.**

7  As this Court has noted, the Rule 23(e)(2)(A) and (B) factors, which are whether "the

8  class representatives and class counsel have adequately represented the class" and whether "the

9  proposal was negotiated at arm's length," "overlap with certain *Hanlon* factors, such as the non-

10 collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings.

11 *In re Extreme Networks*, 2019 WL 3290770, at *7 (citing Fed. R. Civ. P. 23(e)(2)(A)–(B);

12 *Hanlon*, 150 F.3d at 1026). Here, this group of factors favors final approval.

13 First, when originally certifying the Settlement Class, the Court found that both Named

14 Plaintiffs and Class Counsel will adequately represent the class, have done so, and are adequate.

15 Preliminary Approval Order at 3. No contrary evidence has emerged. Similarly, the Court found

16 that Class Counsel have substantial experience in litigating and settling consumer class actions.

17 *Id.* Class Counsel has continued to represent the class diligently by complying with the notice

18 plan and settlement procedures. *See generally* Notice Decl. The Named Plaintiffs likewise

19 actively participated in the prosecution and settlement of this case. Toops Decl. ¶ 4.

20 Second, the Settlement was also the product of arm's-length negotiations through

21 mediation sessions and follow-up communications supervised by Magistrate Judge Laurel

22 Beeler. *Id.* ¶ 2. There was no collusion between the parties, and there are no indications to the

23 contrary. Despite the relatively early stage of the litigation, Class Counsel obtained sufficient

24 information to make an informed decision about the Settlement and about the legal and factual

25 risks of the case. *See* Declaration of Jeffrey Kaliel in Support of Plaintiff's Motion for

26 Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class,

ECF No. 46, ¶¶ 2–3. Among other things, Class Counsel conducted extensive pre-filing investigation of their claims. During the settlement negotiation process, moreover, Class Counsel and Defendants exchanged a substantial amount of information regarding both plaintiffs and the defendant. This substantial mediation discovery enabled Class Counsel to assess the risks of continued litigation and confirmed the substantial benefits to be gained for the class from the settlement.

Third, as discussed below, Class Counsel's fee request is proportionate to the settlement relief and no funds revert to Defendant. The Rule 23(e)(2)(A) and (B) factors therefore favor final approval.

### 2.   Rule 23(e)(2)(C) factors, and their related *Hanlon* factors, favor final approval.

The assessment under Rule 23(e)(2)(C)—whether "the relief provided for the class is adequate"—encompasses the four sub-factors listed in subsections (i)–(iv). Here, each factor favors finding the relief to be adequate, which the Court noted in its Preliminary Approval Order was likely to be the case, given the substantial consideration of a $3 million Settlement Fund, up to $9.5 million in forgiveness for those Settlement Class Members whose accounts have been temporarily suspended due to nonpayment of cash-outs but who wish to use Earnin Express and complete the onboarding process (as described in the Settlement Agreement), and significant injunctive relief. Preliminary Approval Order at 3–4.

***Costs, Risks, and Delay of Trial and Appeal:*** The first Rule 23(e)(2)(C) factor considers "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), which *Hanlon* described as "the strength of the plaintiffs' case, that is, the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. Despite their belief in the merits of their suit, the Plaintiffs faced significant obstacles in this case, both as a matter of fact and law. As demonstrated in Defendant's motion to dismiss, the novel nature of Earnin's business presents unique and

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

-9-                                                                    5:19-CV-05543-BLF

complicated issues of law. Had Plaintiffs' claims survived Defendants' motion to dismiss, the Class faced additional risks with respect to class certification, given the nature of their claims and the facts of the case. Plaintiffs likewise faced substantial risks at the summary judgment phase, not to mention convincing a jury. Given Earnin's novel business model—and the challenges of applying the law to the facts of Earnin's unique circumstances—the risks Plaintiffs faced would continue through appeal. In short, Defendants raised many substantive, potentially meritorious defenses to the claims.

In addition, the relief obtained compares favorably to the maximum amount that the Class may have recovered after judgment, particularly because here the Defendant is a young venture capital startup company with the attendant cash-flow issues and risks that made a larger settlement infeasible from an ability-to-pay standpoint. *See, e.g.*, *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016) (noting the fact that a defendant does not have the ability to pay a larger settlement weighs in favor of finding the relief to be adequate); *see also* Declaration of Jeffrey Kaliel in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, ECF No. 46, ¶ 3. This factor therefore weighs in favor of approval.

***Effectiveness of distributing relief to the class:*** The second factor the Court must likewise consider is "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court has already given preliminary approval to the proposed plan of distributing the fund. The distribution process is as class-member friendly as possible. No claim form is required. For current customers of Defendant, they will receive payment by a credit directly to their linked checking accounts, without the need to complete a claim form or taking any action whatsoever. Settlement, ECF No. 45-2, ¶ IX § 2.a.i. For Class Members who are no longer customers of Defendant, they will be sent an email with a link allowing them to retrieve their payment by electronic money transmission systems, such as Square Cash, Zelle, Venmo, Paypal, or ACH. *Id.* ¶ IX § 2.a.ii. This is a simple, cost-effective,

and convenient method of distributing these funds, particularly because Class Members previously arranged with Defendant to accept electronic transmission of funds and so necessarily will be familiar with this form of payment. This factor weighs in favor of approval.

*The terms of any proposed fee award:* The third factor the Court must consider is "the terms of any proposed award of attorney's fees, including the timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed more fully below, Class Counsel's requested fee is reasonable and will only be paid after final approval of the Settlement, which is the same time Settlement Class Members will receive payment. This factor favors approval.

*Any agreement requiring identification:* The fourth Rule 23(e)(2)(C) factor is "any agreement required to be identified under Rule 23(e)(3)." Named Plaintiffs disclosed in their motion for preliminary approval that a separate plaintiff agreed to voluntarily dismiss his individual claims. This has no effect on the Settlement Class and does not diminish the relief provided for them.

*Experience and views of counsel:* Finally, in assessing the value of the relief versus the risks of continued litigation, under *Hanlon*, the Court also considers "the experience and views of counsel." 150 F. 3d at 1026. Class Counsel in this case are all highly experienced class action practitioners. *See* Firm Resumes, ECF Nos. 46–1, 46–2, 46–3. Here, in Class Counsel's opinion, the Settlement provides fair, reasonable, and adequate compensation to the Settlement Class taking into account the relevant factors. Declaration of Alison Chase in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement ("Chase Decl.") ¶ 2; Declaration of Jeffrey Kaliel in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement ("Kaliel Decl.") ¶ 2; Declaration of Lynn Toops in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement ("Toops Decl.") ¶ 2.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

-11-                                                    5:19-CV-05543-BLF

### 3. Rule 23(e)(2)(D), and its related *Hanlon* factors, favor final approval.

The final Rule 23(e)(2) factor is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Consistent with this instruction, courts consider whether the proposal "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). Under the Agreement, Settlement Class Members will receive payments on a *pro rata* basis based on the number of overdraft fees they incurred where the bank attributed the fee to one of Defendant's withdrawals from their accounts. Settlement ¶ IX § 2. This *pro rata* distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (finding pro rata distribution was equitable). Moreover, the service awards Named Plaintiffs seek are reasonable and do not constitute inequitable treatment of class members. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). This factor weighs in favor of approval.

### 4. The lack of any objections or opt-outs strongly favors final approval.

Finally, the reaction of the Settlement Class Members and regulators strongly confirms that they view the Settlement as "fair, reasonable, and adequate." "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted).

Here, out of more than 270,000 Settlement Class Members, not a single person objected to or opted out of the Settlement. Notice Decl. ¶¶ 13–14. This is an exceptionally positive result. "This positive response from the class confirms that the settlement is fair and reasonable." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9. Likewise, the fact that no regulator believed the Settlement to be objectionable supports its reasonableness.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

-12-                                                                              5:19-CV-05543-BLF

Thus, all the relevant Rule 23(e) and *Hanlon* factors favor final approval.

## V.   THE COURT SHOULD APPROVE THE APPLICATION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS.

In connection with final approval, Named Plaintiffs and Class Counsel request that the Court approve and award: (1) attorneys' fees to Class Counsel in the amount of $900,000, which represents 30% of the Settlement Fund, or less than 8% of the total value of the Settlement when the Settlement's provision of up to $9.5 million in forgiveness described in the Settlement Agreement  is factored in, and not ascribing any value to the highly-valuable injunctive aspects of the Settlement; (2) reimbursement of litigation costs to Class Counsel in the amount of $3,225.59; (3) payment of the costs of notice and administration to the Settlement Administrator, which are estimated to be $70,000; and (4) payment of service awards to the two Named Plaintiffs in the amount of $2,500 each. Each of the requested payments is reasonable and in line with amounts approved by courts in this district, and no Settlement Class Member or regulator has objected to these payments.

### A.   The requested attorneys' fees are reasonable

Under Rule 23(h), the Court has an "independent obligation" to ensure that any fee awarded is reasonable. *In re Bluetooth*, 654 F.3d at 941 ("courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."); *see also Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). For their work in this action, Class Counsel request an attorney fee award in the amount of $900,000. This amount is reasonable under either the percentage of the fund or lodestar method. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *In re Extreme Networks*, 2019 WL 3290770, at *10 (citing *In re Bluetooth*, 654 F.3d at 942). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable

1  result." *In re Bluetooth*, 654 F.3d at 942; *see also In re Coordinated Pretrial Proceedings*, 109

2  F.3d 602, 607 (9th Cir. 1997); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,

3  1294–95 n. 2 (9th Cir. 1994).

### 1. The requested fee is reasonable under the "percentage of the recovery" method.

When applying the percentage-of-recovery method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942; *see also Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir.1990)*. Although 25% is the "benchmark," that percentage "should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Id.* (quoting *Six (6) Mexican Workers*, 904 F.3d at 1311).

By any measure, the requested fee award of $900,000 is reasonable. Viewed as a percentage of the $3 million Settlement Fund, the requested fee is 30%. Importantly, the Settlement also provides for up to $9.5 million in forgiveness of previously unpaid cash-outs to Settlement Class Members whose accounts have been temporarily suspended due to nonpayment of cash-outs but who wish to use Earnin Express and complete the onboarding process (as described in the Settlement Agreement). *See* Settlement ¶ IV § 1. If this amount is factored in, the requested fee is only 7.2% of the total potential monetary relief of $12.5 million, which again demonstrates the fairness of the requested fee.

Further demonstrating reasonableness, the requested fee also does not include the value of the injunctive relief, which includes specific measures that will address overdrafts and benefit Settlement Class Members. *See* Settlement ¶ IV § 2 (detailing the agreed to injunctive relief.)[2]

---

[2] Under Settlement Agreement IV § 2, "Earnin agrees to provide additional disclosures regarding the risk of third-party fees and the company's lack of control over the sequencing of third-party bank transactions in its terms of service for one year, beginning from the date of Final Approval,

Thus, if the Court considers both the Settlement Fund and the potential forgiveness described in the Settlement Agreement, the requested fee is 7.2%, which is well below the benchmark 25%. Indeed, even if just $600,000 of the up to $9.5 million in potential forgiveness described in the Settlement Agreement were claimed, that would result in a quantifiable total cash component value of $3.6 million, making the requested fee merely the benchmark 25%. In these difficult economic times, Class Counsel expect that many Settlement Class Members who wish to use Earnin Express (and whose accounts have been temporarily suspended) will seek to take advantage of the generous forgiveness provisions of the Settlement. And, to reiterate, this is exclusive of the value of injunctive relief obtained for the class.

Even if the Court were to look at the $3 million Settlement Fund only, an upward departure from the benchmark of 25% to 30% would be appropriate given the additional significant relief offered by the potential forgiveness and injunctive aspects of the Settlement. As part of determining whether to depart from that presumptive benchmark, the Ninth Circuit has approved the consideration of several different factors: (1) whether class counsel "achieved exceptional results for the class"; (2) whether the case was risky for class counsel; (3) whether counsel's performance "generated benefits beyond the cash settlement fund"; (4) the market rate

assuming Earnin remains a going concern[;]" "Earnin agrees to refund all subsequent overdraft and insufficient funds fees that are the result of Earnin debiting a customer's account on a day other than the customer's regularly scheduled payday, upon receipt of adequate notice and proof by the customer for one year, assuming Earnin remains a going concern[;]" "Earnin agrees to bundle individual payments for restoration that a user authorizes in a pay period as a single debit, up to a maximum of $35.00, for one year, beginning from the date of Final Approval, assuming Earnin remains a going concern[;]" "Earnin agrees to either partner with a provider of, or itself enable, add-on features that will provide tools for Earnin customers to negotiate overdraft fees with their banks for one year, beginning from the date of Final Approval, assuming Earnin remains a going concern and assuming Earnin continues to offer products that debit third-party bank accounts during that time[;]" "Earnin agrees that it will not consider individual tipping behavior as a factor in determining a customer's max limit for one year, assuming Earnin remains a going concern and assuming Earnin continues to offer services with a tip option during that time[;]" "Earnin  agrees that it will offer the option to tip $0 for each cash-out for one year, assuming Earnin remains a going concern and assuming Earnin continues to offer its cash-out product[;]" and "Earnin agrees that it will comply with all applicable federal and state law, and NACHA operating rules in completing restores from consumer accounts."

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

-15-                                                                   5:19-CV-05543-BLF

1    of compensation for the particular field of law, a factor that is instructive but not controlling; (5)

2    the burdens that counsel for class shouldered while litigating the case; and (6) whether the case

3    was handled on a contingency basis. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

4    954–55 (9th Cir. 2015); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

5          Applying these factors demonstrates that—to the extent that the requested fee is viewed

6    as a departure from the 25% benchmark—that departure is warranted. Applying the relevant

7    factors to this case:

8        • **Results achieved:** The results achieved were excellent for the class,
9          up to $12.5 million in total relief (combining the $3 million
           Settlement Fund and the up to $9.5 million in forgiveness described
10         in the Settlement Agreement) as well as policy changes to assist
           Earnin users going forward. The reaction of the class to the
11         settlement—not a single opt out or objection, following 95% notice—
           confirms that the relief achieved represents an excellent result for the
12         class.

13       • **Risk of litigation:** The risk of this litigation further confirms that an
           upward departure (if this were deemed to be one) is appropriate. The
14         risks were substantial here given both the novel nature of Earnin's
           business, the challenges of applying existing law to the unique
15         structure of Earnin's business, and the risk that Earnin, a new
           company, would face insolvency.
16

17       • **Benefits beyond the cash settlement fund:** As explained, the
           Settlement provides not only for a cash component, but also up to $9.5
18         million for those suspended settlement Class Members whose accounts
           have been temporarily suspended due to nonpayment of cash-outs but
19         who wish to use Earnin Express and complete the onboarding process
           (as described in the Settlement Agreement), and substantial and
20         meaningful injunctive relief.

21       • **Market rate of compensation and the contingent nature of the work**
22         **and burdens shouldered:** The contingent nature of litigating a class
           action, and the corresponding financial burden, often justify an increase
23         from the 25% benchmark, because counsel litigates with no present
           payment and no guarantee of future payment. *See Bower v. Cycle Gear,*
24         *Inc.*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *6-7 (N.D. Cal.
           Aug. 23, 2016) (awarding 30% of common fund for fees and noting
25         that counsel had litigated the action for almost two years with no
           payment and no guarantee of recovery); *Hendricks v. Starkist Co.*, No.
26

---

1
2
3

13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding that enhancement from 25% benchmark was warranted because class counsel carried a substantial financial burden both in advancing out-of-pocket costs and in representing plaintiff and the class members on a contingency basis).

4
5
6
7
8
9

In sum, if the entire amount of potential monetary relief is included, the requested fee is less than 8% of the fund (7.2%, to be precise). Even if one looks to only the $3 million Settlement Fund to be distributed to the class, the requested fee of $900,000 constitutes 30% of the fund, which is reasonable in this case in light of the relief achieved for the class and the risks of this litigation.

**2.      The requested fee is reasonable under the lodestar method.**

10
11
12
13
14
15
16
17
18

Class Counsel's fee is also reasonable under the lodestar method. A "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and experience of the lawyer." *In re Bluetooth,* 654 F.3d at 941 (citation omitted). The calculation incudes both the time expended to date plus the time reasonably anticipated to shepherd the settlement through approval, claims administration, and payment. *See, e.g.*, *Reyes v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856-58 (N.D. Cal. 2017)) (including estimated hours for "future work" related to, inter alia, "managing class members' claims").

19
20
21
22
23
24
25
26

This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth*, 654 F.3d at 942. "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Aboudi v. T-Mobile USA, Inc.*, No. 12-CV-2169-BTM, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015) (citing *Vizcaino*, 290 F.3d at 1051 n. 6). "In common fund cases, a lodestar calculation may [also] provide a cross-check on the reasonableness of a percentage award." *In re Extreme Networks*, 2019 WL 3290770, at *10 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir.

2002)). "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* (quoting *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted)).

That the requested fee is reasonable is also confirmed by a lodestar cross-check. Class Counsel have incurred a lodestar of no less than $477,245. Chase Decl. at Ex. 1; Kaliel Decl. at Ex. 1; Toops Decl. at Ex. 1. This includes the time Class Counsel anticipates spending going forward to ensure the Settlement is properly administered, which the Court may consider. *See, e.g.*, *Reyes*, 281 F. Supp. at 856. The requested fee represents a multiplier of less than 2, which is well within the 1x to 4x range routinely awarded in the Ninth Circuit. Looking to the factors commonly applied:

- ***The quality of representation:*** Class counsel respectfully submit that the results obtained for the class, in light of the risks of this litigation, demonstrate both the skill required and the quality of their work.

- ***The benefit obtained for the class:*** As already discussed, the result for the Settlement Class was excellent, with not a single opt-out or objection.

- ***The complexity and novelty of the issues presented:*** Courts recognize that litigation is risky when, as here, the law is uncertain. *See, e.g.*, *Malta v. Fed. Home Loan Mortg. Corp*., No. 10-CV-1290-BEN, 2013 WL 444619, at *5 (S.D. Cal. Feb. 5, 2013) (risk was presented because "the law interpreting the TCPA and its consent requirement has been under flux"). Here, Earnin's business is novel, the application of the law to that unique business model presented unique and novel questions, and the action was both novel and complex.

- ***The risk of nonpayment:*** As noted above, this matter was taken on a pure contingency basis by Class Counsel.

Moreover, Class Counsel's rates are reasonable. *See, e.g.*, *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, No. 14-MD-02541- CW, 2017 WL 6040065, at *9 (N.D. Cal. Dec. 6, 2017) (approving attorney rates from $295 to $950, and noting that "[a]ll of these rates are well within

the range of $200 to $1,080 charged by attorneys in California in 2015, as shown by a reputable survey of billing rates"); *Rainbow Bus. Solutions v. MBF Leasing LLC*, No. 10-CV-01993-CW, 2017 WL 6017844, at *2 (N.D. Cal. Dec. 5, 2017) (finding that attorney hourly rates from $275 to $950 were "reasonable and commensurate with those charged by attorneys with similar experience who appear in this Court").

Class Counsel's requested fee is reasonable based on the results achieved for the Settlement Class, the risks inherent in the litigation, the novelty of the claims, and Class Counsel's skill in achieving the Settlement. In addition, no Settlement Class Member objected to the fee request, and it is well within the amounts routinely approved in this Circuit and District.

### B.  The requested cost and expense reimbursement is reasonable

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted). As detailed in Class Counsel's Declarations, Class Counsel has incurred $3,225.59 in normal litigation expenses that would normally be charged to a fee-paying client. Chase Decl. at Ex. 2; Kaliel Decl. at Ex. 2; Toops Decl. at Ex. 2. Therefore, the Court should approve reimbursement of these expenses from the Settlement Fund. *Harris*, 24 F.3d at 19.

### C.  The fees for notice and settlement administration are reasonable

A Settlement Administrator that oversees notice and settlement administration of a class action is also entitled to an award of its reasonable costs in doing so. *See, e.g.*, *In re Extreme Networks* 2019 WL 3290770, at *12 (approving costs to Settlement Administrator of up to $500,000 to mail notice and administer settlement involving approximately 28,000 members). As discussed during the Preliminary Approval Hearing, the Parties' best estimate of costs of notice and administration was approximately $60,000-$70,000. The Parties worked diligently with the Settlement Administrator, both prior to and after the Preliminary Approval Hearing, to ensure every possible efficiency was achieved.  In the end, total costs are currently estimated to be

1  $70,000. Kaliel Decl. ¶ 4. Therefore, the Court should approve payment to the Settlement

2  Administrator of the actual costs of notice and administration.

3           **D.  The requested service awards are reasonable.**

4           Finally, service awards to class representatives "as high as $5,000 are presumptively

5  reasonable in this judicial district." *In re Extreme Networks* 2019 WL 3290770, at *12 (citing

6  *Camberis v. Ocwen Loan Serv. LLC*, No. 14-cv-02970-EMC2015 WL 7995534, at *3 (N.D. Cal.

7  Dec. 7, 2015)). Without the Named Plaintiffs, this Settlement and its benefits to the Settlement

8  Class Members would not have been possible. The Named Plaintiffs were actively involved in

9  the litigation, and the requested $2,500 service award to each is "presumptively reasonable" and

10 well-deserved for the benefits they have obtained for the Settlement Class Members, without the

11 need for any Settlement Class Member to devote their own time and resources. *See id.*; Toops

12 Decl. ¶ 4.

13 **VI.    CONCLUSION**

14         For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant final

15 approval to the Settlement, reaffirm certification of the Settlement Class, and approve the

16 requested payments for attorneys' fees, expenses, notice and administration costs, and service

17 awards.

18

19         DATED this 19th day of February 2021.

20                                              By *s/ Alison E. Chase*
21                                              Alison E. Chase (SBN 226976)
                                                Matthew J. Preusch (SBN 298144)
22                                              Christopher L. Springer (SBN 291180)
                                                Keller Rohrback, L.L.P.
23                                              801 Garden Street, Suite 301
                                                Santa Barbara, CA 93101
24                                              (805) 456-1496
                                                Fax (805) 456-1497
25

26

1
achase@kellerrohrback.com
mpreusch@kellerrohrback.com
2
cspringer@kellerrohrback.com

3
By *s/ Lynn A. Toops*
Lynn A. Toops, *pro hac vice*
4
Vess Allen Miller (SBN 278020)
Lisa M. La Fornara, *pro hac vice*
5
Cohen & Malad, LLP
One Indiana Square, Suite 1400
6
Indianapolis, IN 46204
(317) 636-6481
7
Fax: 317-636-2593
ltoops@cohenandmalad.com
8
vmiller@cohenandmalad.com
9
llafornara@cohenandmalad.com

10
By s/ Jeffrey Douglas Kaliel
11
Jeffrey Douglas Kaliel (SBN 238293)
Sophia Goren Gold (SBN 307971)
12
Kaliel PLLC
1875 Connecticut Avenue NW, 10th Floor
13
Washington, DC 20009
(202) 350-4783
14
jkaliel@kalielpllc.com
15
sgold@kalielpllc.com

16
*Settlement Class Counsel*

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I, Alison E. Chase, hereby certify that on this 19th day of February, 2021, I electronically filed Plaintiffs' Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs and Service Award with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

_s/ Alison E. Chase_
Alison E. Chase