UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MARY PERKS and STANLEY ALEXANDER, individually and on behalf of all others similarly situated., <br><br> Plaintiffs, <br><br> v. <br><br> ACTIVEHOURS, INC. D/B/A EARNIN, <br><br> Defendant. | Case No. 5:19-cv-05543-BLF <br><br> [Proposed] Order Granting Plaintiffs' Unopposed Motion for Final Approval of Class Settlement and for Approval of Attorneys' Fees, Costs, and Service Awards |

## I. INTRODUCTION

Plaintiffs Mary Perks and Stanley Alexander, together with Defendant ActiveHours, Inc. (d/b/a "Earnin"), entered into a Settlement Agreement on behalf of themselves and a proposed class of similarly situated customers. ECF No. 45-2. The Court certified the Settlement Class, granted preliminary approval to the Settlement, directed notice of the Settlement be distributed to the Settlement Class, and scheduled a hearing on final approval. ECF No. 50 (the "Preliminary Approval Order"). Notice having been given, the Plaintiffs have now moved the Court to grant final approval to the Settlement, certify the Settlement Class for purposes of entering judgment on the Settlement, approve payment of attorneys' fees and expenses to Settlement Class Counsel, and approving payment of a service award to the Settlement Class Representatives.

IT IS HEREBY ORDERED AS FOLLOWS:

The Court finds that it has jurisdiction over this action, the parties, and all Settlement Class members for purposes of settlement under 28 U.S.C. § 1332(d). Having considered the motion and any responses thereto, and having held a hearing on final approval, the Court HEREBY GRANTS Plaintiffs' motion.

All capitalized terms in this Order have the same meaning as in the Settlement.

## II. THE SETTLEMENT TERMS

The proposed Settlement Class consists of approximately 273,071 Earnin users who incurred at least one overdraft fee or insufficient funds event fee charged by a bank that the bank attributed to a withdrawal from Earnin between September 3, 2015 to May 28, 2020.

Per the Settlement Agreement's terms and in exchange for a release of Settlement Class Members' claims, Earnin will provide three million dollars ($3,000,000.00) in total monetary relief to fund the Settlement that will be borne by Defendant, and out of which will be paid the Settlement Relief (see Section IV of the Settlement Agreement), the costs of the Settlement Administrator (see Section IV of the Settlement Agreement), any attorney's fees awarded Class Counsel by this Court after motion (see Section XI of the Settlement Agreement), and any

service awards the Court grants the Named Plaintiffs (see Section XI of the Settlement Agreement).

With respect to Settlement Class Members whose accounts have been temporarily suspended due to nonpayment of cash outs, Defendant through the Class Settlement process shall allow such Settlement Class Members to use Earnin Express (subject to account onboarding requirements, including federal law), and until an aggregate amount of $9.5 million is forgiven across such suspended Settlement Class Members, these such Settlement Class Members shall not be required to repay previously unpaid cash outs as a part of the application to Earnin Express, with such forgiveness occurring automatically upon completion of the onboarding process to Earnin Express.

By agreeing to the Settlement, Earnin does not concede the merits of Settlement Class Members' claims. For the avoidance of doubt, no term of the Settlement Agreement or any part of the parties' settlement discussions, negotiations or documentation (including any briefs filed in support of preliminary or final approval of the Settlement) shall be deemed an admission or concession by any party regarding the validity of any Released Claim or the propriety of certifying any class against Defendants, or be deemed an admission or concession by any party regarding the truth or falsity of any facts alleged in the Action or the availability or lack of availability of any defense to the Released Claims.

### III.   FINAL APPROVAL OF THE CLASS SETTLEMENT

A court may grant final approval to a class action settlement once it determines that the proposed class meets the requirements for certification under Federal Rule of Civil Procedure 23 and that the settlement reached on behalf of the class is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").The Court must also find as a threshold matter that adequate

ORDER RE: PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS
-2-                                                                                                                                  5:19-CV-05543-BLF

notice of the proposed settlement has been given to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025–27 (9th Cir. 1998). Here, the Court finds that adequate notice has been given, the requirements for certification are met, and the Settlement is fundamentally fair, which warrants the granting of final approval.

### A.   Notice to the Settlement Class was adequate.

As to the threshold issue of notice to the Settlement Class, the notice provided in this case was exceptionally effective. "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class. *Bickel v. Sheriff of Whitley Cty.*, No. 1:08-CV-102-TLS, 2015 WL 1402018, at *2 (N.D. Ind. Mar. 26, 2015) (citing Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide* 3 (2010) ("It is reasonable to reach between 70–95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%.")).

Here, the notice approved by the Court in the Preliminary Approval Order was directed to all Settlement Class Members, by one or two emails or by text, and no group was systematically left without notice. *See generally* Notice Decl. The Settlement Administrator reported that, after two rounds of emails, less than 5% of Class Members had emails that bounced back. *Id.* The fact that 95% of the Settlement Class received notice shows that the method of notice was highly effective and adequate. *Bickel*, 2015 WL 1402018, at *2. In addition, the Settlement Administrator issued the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, to the relevant Attorneys General of the United States, all 50 U.S. States, and the 5 U.S.

Territories. *See generally* Notice Decl. The threshold requirement of notice for final approval is therefore satisfied.

### B. The Settlement Class meets the requirements for certification under Rule 23(a) and 23(b)(3).

Plaintiffs propose, and the Court previously certified, the following Settlement Class under Rule 23(a) and 23(b)(3):

> All consumers who incurred an overdraft fee or insufficient funds event fee that a bank attributed to an Earnin withdrawal, beginning on September 3, 2015 through May 28, 2020.

*See* ECF No. 50.

A class action is maintainable only if it meets the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See* ECF 50. The Court is not aware of any new facts which would alter that conclusion. However, the Court reviews the Rule 23 requirements again briefly, as follows.

Turning first to the Rule 23(a) prerequisites, the Court has no difficulty concluding that because the class contains over 270,000 members, joinder of all class members would be impracticable. The commonality requirement is met because all Settlement Class members had at least one overdraft fee or insufficient funds fee event charged by a bank attributed to a withdrawal from Earnin from September 3, 2015 to May 28, 2020, and all Settlement Class Members' claims arise from those events. Named Plaintiffs' claims are typical of those of the Settlement Class, as they advance the same claims, share identical legal theories, and allege that they experienced losses as a result of Defendant's practices. *See Hanlon*, 150 F.3d at 1020 (typicality requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members"). Finally, to determine Named Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no conflict of interest which would preclude Named Plaintiffs from acting as class representative.

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common questions in this case include whether each Settlement Class Member had at least one overdraft fee or insufficient funds fee event charged by a bank that the bank attributed to a withdrawal fee from Earnin from September 3, 2015 to May 28, 2020, and Earnin's withdrawal

practices regarding the same. These questions predominate. Moreover, given this commonality, and the number of potential class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements for certification under Rule 23(a) and 23(b)(3) are met and reaffirms its prior certification of the Settlement Class, and its prior appointments of Class Counsel and the Class Representatives.

### C.   The Settlement is fundamentally fair, reasonable, and adequate.

As to the issue of the ultimate fairness of the Settlement, the Court likewise found in the Preliminary Approval Order that the settlement consideration provided was "likely to be approved as fair, adequate, and reasonable compensation to Settlement Class Members." ECF No. 50 at 3. That preliminary finding of fairness has since been strengthened by the fact that no Settlement Class Members opted out of or objected to the Settlement, Notice Decl. ¶¶ 13–14, and the Court now finds that the Settlement is fair, reasonable, and adequate for final approval.

District Courts consider and balance multiple factors to assess whether a settlement is "fair, adequate, and free from collusion" under Rule 23(e). *Hanlon*, 260 F.3d at 1027. These factors are:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citation omitted).

In addition to the *Hanlon* factors, the 2018 amendments to Rule 23 established a uniform set of factors courts must consider when determining whether a settlement is fair, reasonable, and adequate, including whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"The notes of the Advisory Committee explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks*, 2019 WL 3290770, at *6 (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)). "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)"—the fairness, reasonableness, and adequacy of the proposed settlement. *Id.* at *6 (again quoting the advisory notes). "[T]he underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

In this case, the Court finds that each of the relevant factors under *Hanlon* and Rule 23(e)(2) favor final approval of the Settlement as "fair, reasonable, and adequate."

### 1. Rule 23(e)(2)(A) and (B) factors, and their related Hanlon factors, favor final approval.

As this Court has previously noted, the Rule 23(e)(2)(A) and (B) factors, which are whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length," "overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage

of proceedings. *In re Extreme Networks*, 2019 WL 3290770, at *7 (citing Fed. R. Civ. P. 23(e)(2)(A)–(B); *Hanlon*, 150 F.3d at 1026). Here, this group of factors favors final approval.

Initially, when originally certifying the Settlement Class, the Court found that both Named Plaintiffs and Class Counsel will adequately represent the class, have done so, and are adequate. ECF No. 50 at 3. No contrary evidence has emerged. Similarly, the Court found that Class Counsel have substantial experience in litigating and settling consumer class actions. *Id.* Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case. *See* Declaration of Jeffrey Kaliel in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, ECF No. 46, ¶¶ 2–3. Class Counsel has continued to represent the class diligently by complying with the notice plan and settlement procedures. *See generally* Notice Decl. The Named Plaintiffs likewise actively participated in the prosecution and settlement of this case. ECF No. 46 ¶ 6.

The Settlement was also the product of arm's-length negotiations through mediation sessions and follow-up communications supervised by United States Magistrate Judge Laurel Beeler. *Id.* ¶ 2. There is no indication of any collusion between the parties. As discussed below, Class Counsel's fee request is proportionate to the settlement relief and no funds revert to Defendant. The Rule 23(e)(2)(A) and (B) factors therefore favor final approval.

### 2. Rule 23(e)(2)(C) factors, and their related Hanlon factors, favor final approval.

In assessing Rule 23(e)(2)(C)'s factor of whether "the relief provided for the class is adequate," courts must take into account the four sub-factors listed in subsections (i)–(iv). Here, each factor favors finding the relief to be adequate, which the Court noted in its Preliminary Approval Order was likely to be the case, given the substantial consideration of a $3 million Settlement Fund, up to $9.5 million in forgiveness for those suspended Settlement Class Members whose accounts have been temporarily suspended due to nonpayment of cash outs but

who wish to use Earnin Express and complete the onboarding process (as described in the Settlement Agreement), and injunctive relief. ECF No. 50 at 3–4.

The first factor to consider against is "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), which *Hanlon* described as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. Despite their belief in the merits of their suit, the Settlement Class faced significant obstacles in this case, including needing to survive a motion to dismiss that raised important and complicated issues. Had they survived that motion, the Settlement Class faced additional risks for class certification, and on summary judgment, not to mention convincing a jury, and then subsequent appellate judges, of their entitlement to relief. In addition, the relief obtained compares favorably given the potential issues of the ability of Defendant to pay a larger amount. *See, e.g.*, *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016) (noting the fact that a defendant does not have the ability to pay a larger settlement weighs in favor of finding the relief to be adequate); *See* Declaration of Jeffrey Kaliel in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement and for Certification of a Settlement Class, ECF No. 46 ¶ 3. This factor therefore weighs in favor of approval.

The second factor the Court must likewise consider is "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court has already given preliminary approval to the proposed plan of distributing the fund. ECF No. 50. And the distribution process is class-member friendly. For current customers of Defendant, they will receive payment by a credit directly to their linked checking accounts, without the need to complete a claim form or taking any action whatsoever. Settlement, ECF No. 45-2, ¶ IX § 2.a.i. For Class Members who are no longer customers of Defendant, they will be sent an email with a link allowing them to retrieve their payment by electronic money transmission systems, such as

Square Cash, Zelle, Venmo, Paypal, or ACH. *Id.* ¶ IX § 2.a.ii. This is a simple, cost-effective, and convenient method of distributing these funds. This factor weighs in favor of approval.

The third factor the Court must consider is "the terms of any proposed award of attorney's fees, including the timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed more fully below, Class Counsel's requested fee is reasonable and will only be paid after final approval of the Settlement, which is the same time Settlement Class Members will receive payment. This factor favors approval.

The fourth Rule 23(e)(2)(C) factor is "any agreement required to be identified under Rule 23(e)(3)." Named Plaintiffs disclosed in their motion for preliminary approval that a separate plaintiff agreed to voluntarily dismiss his individual claims. This has no effect on the Settlement Class and does not diminish the relief provided for them.

Finally, in assessing the value of the relief versus the risks of continued litigation, under *Hanlon*, the Court also considers "the experience and views of counsel." 150 F. 3d at 1026. Here, in Class Counsel's opinion, the Settlement provides fair, reasonable, and adequate compensation to the Settlement Class taking into account the relevant factors.

### 3.  Rule 23(e)(2)(D), and its related *Hanlon* factors, favor final approval.

The final Rule 23(e)(2) factor is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Consistent with this instruction, the Court considers whether the proposal "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). Under the Agreement, Settlement Class Members will receive payments on a pro rata basis based on the number of overdraft fees they incurred as a result of Defendant's withdrawals from their accounts. Settlement ¶ IX § 2. This pro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages. *See, e.g.*, *In re Extreme Networks*, 2019 WL 3290770, at *8 (finding pro rata distribution was equitable). Moreover, the service awards Named Plaintiffs seek

are reasonable and do not constitute inequitable treatment of class members. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). This factor weighs in favor of approval.

### 4. The lack of any objections or opt-outs strongly favors final approval.

Finally, the reaction of the Settlement Class Members and regulators strongly confirms that they view the Settlement as "fair, reasonable, and adequate." "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted).

Here, out of more than 270,000 Settlement Class Members, not a single person objected to, or opted out of, the Settlement. Notice Decl. ¶¶ 13–14. "This positive response from the class confirms that the settlement is fair and reasonable." *In re Extreme Networks*, 2019 WL 3290770, at *9. Likewise, the fact that no regulator believed the Settlement to be objectionable supports its reasonableness.

Thus, all of the relevant Rule 23(e) and *Hanlon* factors favor final approval.

## IV. THE APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS.

In connection with final approval, Named Plaintiffs and Class Counsel have also requested that the Court approve and award: (1) attorneys' fees to Class Counsel in the amount of $900,000; (2) reimbursement of litigation costs to Class Counsel in the amount of $3,225.59; (3) payment of the costs of notice and administration to the Settlement Administrator not to exceed $70,000; and (4) payment of service awards to the two Named Plaintiffs in the amount of $2,500 each. Each of the requested payments is reasonable and in line with amounts approved by courts in this district, and no Settlement Class Member or regulator has objected to these payments.

### 1. The requested attorneys' fees are reasonable.

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent

obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Extreme Networks*, 2019 WL 3290770, at *10 (quoting *In re Bluetooth*, 654 F.3d at 941). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* (quoting *In re Bluetooth*, 654 F.3d at 942).

"Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class." *Id.* Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (citations omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Id.* (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011)). Relevant factors to a determination of the percentage ultimately awarded include "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Id.* (quoting *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009)). Moreover, courts should consider the value of any injunctive relief obtained as a "relevant circumstance" in determining what percentage of the common fund class counsel should receive as attorneys' fees and whether to go above the benchmark. *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 941). This amount may be increased or decreased by a

multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 942). Courts have found that "[m]ultipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Id.* at *11 (quoting *Aboudi v. T-Mobile USA, Inc.*, No. 12-CV-2169-BTM, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015)).

"In common fund cases, a lodestar calculation may [also] provide a cross-check on the reasonableness of a percentage award." *Id.* (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* (quoting *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted)).

Here, the requested fee award of $900,000 is reasonable under either method. Under the percentage of the fund method, the requested fee would be 30% of the $3 million Settlement Fund or less than 8% of the total potential monetary relief of $12.5 million, which includes the additional up to $9.5 million in forgiveness as described in the Settlement Agreement. *See* Settlement ¶ IV § 1. This also does not include the value of the injunctive relief, which includes specific measures addressing overdrafts as described in the Settlement Agreement. *See* Settlement ¶ IV § 2 (detailing agreed to injunctive relief). Thus, if the Court considered both the Settlement Fund and forgiveness of unpaid cash outs as described in the Settlement Agreement, the requested fee is less than 8%, which is well below the benchmark 25%. And even were the Court to look at the $3 million Settlement Fund only, an upward departure from the benchmark 25% to 30% would be appropriate given the additional significant relief offered by the potential forgiveness and injunctive aspects of the Settlement.[1]

---

[1] Even if just $600,000 of the up to $9.5 million of the potential forgiveness were claimed, that would result in a quantifiable total cash component value of $3.6 million, making the requested fee merely the benchmark 25%.

That the requested fee is reasonable is also confirmed by a lodestar cross-check. Class Counsel have incurred a lodestar of $477,245. The requested fee represents a multiplier of less than 2, which is well within the 1x to 4x range routinely awarded in the Ninth Circuit. The fee is reasonable based on the results achieved for the Settlement Class, the risks inherent in the litigation, the novelty of the claims, and Class Counsel's skill in achieving the Settlement. In addition, no Settlement Class Member objected to the fee request, and it is well within the amounts routinely approved in this Circuit and District.

### 2. The requested reimbursement of expenses are reasonable.

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted). Class Counsel has incurred $3,225.59 in normal litigation expenses that would normally be charged to a fee-paying client. Chase Decl. at Ex. 2; Kaliel Decl. at Ex. 2; Toops Decl. at Ex. 2. Therefore, the Court approves reimbursement of these expenses from the Settlement Fund. *Harris*, 24 F.3d at 19.

### 3. The costs for notice and settlement administration are reasonable.

The Court also holds that it is appropriate to award the Settlement Administrator its costs. *See, e.g.*, *In re Extreme Networks* 2019 WL 3290770, at *12 (approving costs to Settlement Administrator of up to $500,000 to mail notice and administer settlement involving approximately 28,000 members).

As discussed during the Preliminary Approval Hearing, the Settlement Administrator's best estimate of costs of notice and administration was approximately $60,000-$70,000. The Parties worked diligently with the Settlement Administrator, both prior to and after the Preliminary Approval Hearing, to ensure every possible efficiency was achieved. In the end, total costs are currently estimated to be $70,000. Kaliel Decl. ¶ 4. Therefore, the Court approves payment to the Settlement Administrator of the actual costs of notice and administration.

### 4. The requested service awards are reasonable.

Finally, service awards to class representatives "as high as $5,000 are presumptively reasonable in this judicial district." *Id.* (citing *Camberis v. Ocwen Loan Serv. LLC*, No. 14-cv-02970-EMC2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015)). A service award recognizes the time and effort of the named plaintiffs and the fact that they secured a recovery for absent class members. Without the named plaintiffs, this Settlement, and its benefits to the Settlement Class Members, would not have been possible. The named plaintiffs were actively involved in the litigation, and the requested $2,500 service award to each is "presumptively reasonable" and well-deserved for the many benefits they have obtained for the Settlement Class Members, without the need for any Settlement Class Member to devote their own time and resources to this litigation. *See id.* Therefore, the Court approves the payment from the Settlement Fund of $2,500 to each of the named plaintiffs.

## V.   ORDER

For all of the foregoing reasons, the Court grants final approval to the Settlement, reaffirms certification of the Settlement Class, and approves the requested payments for attorneys' fees, expenses, notice and administration costs, and service awards as follows:

(1) Pursuant to Rules 23(a) and 23(b)(3), the Court reaffirms its certification of the Settlement Class, defined as:

> All consumers who incurred an overdraft fee or insufficient funds event fee that a bank attributed to an Earnin withdrawal, beginning on September 3, 2015 through May 28, 2020.

The Court reaffirms its appointment of the named plaintiffs as Class Representatives and of their counsel as Class Counsel under Rule 23(g);

(2) The Court finds that notice of the proposed Settlement has been given to the Settlement Class in compliance with Rule 23(c)(2)(B) and due process;

| | | |
|---|---|---|
| 1 | (3) | The Court finds that the Settlement is "fair, reasonable, and adequate" under Rule 23(e)(2) and grants final approval to the Settlement, directing the Parties to implement the terms of the Settlement and effectuating the releases as provided in the Settlement. All Settlement Class Members who have not timely opted out are bound to all of the terms and the Settlement Agreement, including the relief and releases; |
| 2 | (4) | The Court awards Class Counsel attorneys' fees in the amount of $900,000 and reimbursement of expenses of $3,225.59 to be paid from the Settlement Amount; |
| 3 | (5) | The Court awards the Settlement Administrator its actual costs of notice and administration, not to exceed $70,000 to be paid from the Settlement Amount; and |
| 4 | (6) | The Court awards each of the Class Representatives a service award of $2,500. |
| 5 | (7) | The Court approves and directs the parties and the Settlement Administrator to effectuate the distribution of the Net Settlement Fund to the Settlement Class Members on the terms set forth in the Settlement; |
| 6 | (8) | This action is dismissed with prejudice, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the Court. |

IT IS SO ORDERED

DATED  March 25, 2021  .

*Beth Labson Freeman* (signature)